# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA

## Alexandria Division

COURTNEY WILLIAMS,

    Plaintiff,

v.                          Civil Action No. 1:17-cv-1200

TEGNA INC.,

    Defendant.

## Memorandum Opinion

THIS MATTER comes before the Court on Defendant's Motion for Summary Judgment.

Plaintiff Courtney Williams, an African-American, was employed by Defendant TEGNA Inc. ("TEGNA") from 2013 until her termination in October 2016 following an ethics investigation. The investigation was initiated after a complaint was filed against Plaintiff by a female African-American coworker. Plaintiff alleges that TEGNA discriminated against her based on her race through the investigation process and in terminating her employment.

TEGNA is a media company that operates several broadcasting stations. TEGNA's predecessor organization, Gannett Co., hired Plaintiff in 2013. Kevin Lord was involved in the hiring

decision. When Gannett Co. became TEGNA Inc. in June 2015, Plaintiff was promoted to Group Human Resources Director for the Southeastern Region. Mr. Lord, as Chief Human Resources Officer, participated in the decision to promote Plaintiff.

As Group Human Resources Director, Plaintiff served about eight of TEGNA's broadcasting stations. Plaintiff was responsible for providing information and documentation necessary for Federal Communications Commission ("FCC") filings and for assisting to complete those filings. On one occasion in August 2016, Plaintiff's failure to timely provide a specific document resulted in TEGNA missing an FCC filing deadline. Mr. Lord met with Plaintiff following this incident to express the seriousness of the issue, and Plaintiff took full responsibility for the failure. TEGNA then implemented new procedures for FCC filings, including instituting new internal deadlines. In September 2016, Plaintiff once again failed to timely provide necessary information and documents, this time resulting in failure to meet an internal deadline.

Also in September 2016, Cheryl Cowans, a female African-American coworker of Plaintiff, initiated an ethics complaint against Plaintiff. The complaint raised several issues, including multiple alleged violations of company policy and matters that implicated Plaintiff's integrity. As a result of this complaint, an investigation was initiated. Over the course

of three weeks, an investigator looked into thirty-seven issues of concern provided by Ms. Cowans, and conducted interviews with eight individuals in addition to Ms. Cowans. The investigator also gathered documentation from multiple witnesses related to the issues raised in their interviews. Finally, the investigator interviewed Plaintiff for approximately two hours, during which Plaintiff had the opportunity to, and did, provide documentation related to the allegations against her.

The concerns identified against Plaintiff during the investigation generally fell into five categories: (1) changing policies and practices without advance notice or communication, (2) parking in expectant mothers and fire lane parking spaces, (3) failing to properly and timely address employee onboarding and payroll issues, (4) failing to communicate or respond to employee requests and concerns, and (5) providing concerning messaging regarding hiring candidates based on diversity instead of qualification. According to TEGNA, the investigation confirmed that Plaintiff had lost the credibility and trust of the leadership team at the stations she served. Her supervisors believed that the issues raised in the investigation reflected a critical lack of integrity and professional judgment that were unacceptable in a person holding a regional, director level human resources position such as Plaintiff.

Plaintiff has conceded that according to TEGNA's policies

of three weeks, an investigator looked into thirty-seven issues of concern provided by Ms. Cowans, and conducted interviews with eight individuals in addition to Ms. Cowans. The investigator also gathered documentation from multiple witnesses related to the issues raised in their interviews. Finally, the investigator interviewed Plaintiff for approximately two hours, during which Plaintiff had the opportunity to, and did, provide documentation related to the allegations against her.

The concerns identified against Plaintiff during the investigation generally fell into five categories: (1) changing policies and practices without advance notice or communication, (2) parking in expectant mothers and fire lane parking spaces, (3) failing to properly and timely address employee onboarding and payroll issues, (4) failing to communicate or respond to employee requests and concerns, and (5) providing concerning messaging regarding hiring candidates based on diversity instead of qualification. According to TEGNA, the investigation confirmed that Plaintiff had lost the credibility and trust of the leadership team at the stations she served. Her supervisors believed that the issues raised in the investigation reflected a critical lack of integrity and professional judgment that were unacceptable in a person holding a regional, director level human resources position such as Plaintiff.

Plaintiff has conceded that according to TEGNA's policies

disciplinary decisions are made on an individualized basis. Those policies provide that, in some circumstances, immediate termination is appropriate without placement on a performance improvement plan. In Plaintiff's case, Mr. Lord made the decision to terminate Plaintiff immediately without placing her on a performance improvement plan. TEGNA also did not have a policy that required payment of severance upon termination, and in Plaintiff's case, a severance payment was deemed to be neither appropriate nor warranted. Mr. Lord ultimately hired as Plaintiff's replacement Mr. Grady Tripp, an African-American.

Plaintiff brought suit against TEGNA under 42 USC § 1981 and Title VII of the Civil Rights Act of 1964. She alleges that she experienced racial discrimination in the form of resistance and resentment toward her efforts to promote greater diversity within TEGNA's workforce, in the investigation process, and in her termination. She alleges that TEGNA discriminated against her on the basis of race when it investigated her based on frivolous complaints. She also alleges that, despite having no disciplinary policy requiring placement on a performance improvement plan or provision of a severance payment, TEGNA had a normal practice of doing so, and that she was terminated immediately without severance contrary to that practice. TEGNA filed this Motion for Summary Judgment on May 24, 2018.

Under Federal Rule of Civil Procedure 56, a court should

4

grant summary judgment if the pleadings and evidence show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In reviewing a motion for summary judgment, the court views the facts in the light most favorable to the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Once a motion for summary judgment is properly made, the opposing party has the burden to show that a genuine dispute of material fact exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). The Court finds there is no genuine dispute of material fact and this case is ripe for summary judgment.

The Supreme Court's decision in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), set forth a burden-shifting framework that a plaintiff must satisfy to prove unlawful discrimination where there is no direct evidence of discrimination. The plaintiff must first establish a *prima facie* case of discrimination, and then the burden of production shifts to the employer to provide a legitimate, non-discriminatory explanation for the employment decision at issue. See Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981). Once the employer has done so, the burden of production shifts back to the plaintiff to demonstrate that the employer's explanation is

5

merely pretextual. Id.

To establish her *prima facie* claim under Title VII or § 1981, Plaintiff must show that (1) she is a member of a protected class, (2) she was satisfactorily performing her duties, (3) she was subjected to an adverse employment action, and (4) similarly situated persons outside her class were treated more favorably. Gerner v. Cty. Of Chesterfield, 674 F.3d 264, 266 (4th Cir. 2012).

Plaintiff cannot establish the elements of her *prima facie* claim. First, the record demonstrates that Plaintiff was not performing satisfactorily at the time of her discharge. Her failure to timely provide necessary documents caused an FCC filing deadline to be missed, and just over a month later she caused an internal filing deadline to be missed as well. Furthermore, the ethics complaint filed against Plaintiff by a coworker belonging to the same protected class identified over thirty concerns and issues about Plaintiff that implicated her integrity, timeliness, and responsibility. The witnesses interviewed during the investigation process echoed these concerns. Plaintiff disputes and denies some of these allegations, but even so there is still ample undisputed evidence demonstrating that Plaintiff was not satisfactorily performing her job.

Plaintiff also cannot identify similarly situated

6

individuals who received more favorable treatment than her. When relying on a comparator, a plaintiff must "show that [he is] similar in all relevant respects to [his] comparator. Such a showing would include evidence that the employees dealt with the same supervisor, were subject to the same standards and . . . engaged in the same conduct." Haywood v. Locke, 387 Fed. App'x. 355, 359 (4th Cir. 2010). In an attempt to do so, Plaintiff identifies a former vice president and station manager who was allowed to work for several more months after some unstated performance problems and received a severance payment upon termination, and a former general manager who was given severance upon termination. However, Plaintiff's Declaration fails to identify the supervisors of these individuals, let alone establish that they were terminated by the same person who terminated Plaintiff (Mr. Lord). She does not assert that these individuals committed the same or similar performance failures as she did, or that they were subjects of an internal investigation. Furthermore, these individuals held different positions than Plaintiff, and there are no allegations regarding their duties and responsibilities or the standards to which they were held in comparison to Plaintiff's position.

Moreover, "[w]hen the hirer and firer are the same individual, there is a powerful inference relating to the 'ultimate question' that discrimination did not motivate the

7

employer." Proud v. Stone, 945 F.2d 796, 798 (4th Cir. 1991). Because the decisions to hire, promote, and later terminate Plaintiff were all made by Mr. Lord, there is a powerful inference against finding a motive of discrimination. There is also a strong inference against discrimination due to the fact that Plaintiff's replacement, Grady Tripp, was of the same race as Plaintiff, and was hired by Mr. Lord less than three months after Mr. Lord terminated Plaintiff.

The fact that Plaintiff was terminated by the same individual who hired her, was replaced by a member of the same protected class shortly thereafter, had exhibited multiple performance issues, and was the subject of an ethics complaint and an internal investigation precludes any rational inference of discrimination. Plaintiff has therefore failed to establish a *prima facie* case of race discrimination, and so her claims under both Title VII and § 1981 fail as a matter of law.

Even if Plaintiff had established her *prima facie* case, TEGNA has properly offered a legitimate, non-discriminatory explanation for her termination. As explained above, Plaintiff had exhibited performance issues and was the subject of an ethics complaint and an internal investigation that resulted in a determination that she had lost the trust and credibility of the leadership team at TEGNA and that she lacked the integrity and professional judgment required for someone in her position.

8

Furthermore, TEGNA has shown and Plaintiff has conceded that TEGNA has no policies requiring an employee to be placed on a performance improvement plan or to receive a severance payment, but rather these decisions are made on a case-by-case basis.

Plaintiff argues that TEGNA's explanation is merely pretextual by disputing the allegations made against her in the ethics investigation and asserting that TEGNA should have determined based on the evidence that the complaints were frivolous. However, Plaintiff's disagreement with TEGNA's determination following the investigation is not sufficient to support pretext. "'It is the perception of the decision maker which is relevant,' not the self-assessment of the plaintiff." Evans v. Tech. Apps. & Serv. Co., 80 F.3d 954, 960-61 (4th Cir. 1996) (quoting Smith v. Flax, 618 F.2d 1062, 1067 (4th Cir. 1980)).

For the foregoing reasons, this Court holds that Defendant is entitled to summary judgment. An appropriate order shall issue.

/s/ Claude M. Hilton
CLAUDE M. HILTON
UNITED STATES DISTRICT JUDGE

Alexandria, Virginia
July 3, 2018

9